315-0577, people of the state of Illinois, amplified by Don Duffy v. Marti Smolley, appellant by Josette Skelnick Ms. Skelnick, before you start, I'd like to say Judge McDade is absent today and she's got matters that cannot be reconciled because she's been in court today. So she will participate in the case, discuss it with us, listen to the tapes, and fully participate. So with that said, if you want to come in. Thank you. Thank you, Your Honors. Good afternoon. Good afternoon, Your Honors. Good afternoon, Counsel. May it please the Court. My name is Josette Skelnick. I'm from the Office of the State Appellate Defender in Elgin. I'm here this morning on behalf of Marti Smolley. Marti is appealing from the 65-year sentence that was imposed on him after his petition for post-conviction relief was granted and he was given a new sentencing hearing because the original sentence he received of mandatory natural life imprisonment as a 15-year-old violated Miller v. Alabama. We are asking that Marti be given again a new sentencing hearing because the trial judge in this case imposed the sentence at the resentencing hearing in violation of both Miller and the United States Supreme Court's subsequent decision in Montgomery v. Louisiana. I would like to note that we had originally in the briefs raised an initial argument, argument one, asking that this case be sent back for a discretionary transfer hearing because of the change in the juvenile transfer law that had taken place while Marti's case was on appeal here. The state had actually agreed with us that if this case were in fact on direct appeal that he would be entitled to a discretionary transfer hearing. However, after all the briefs were filed, the Alabama Supreme Court decided the case of People v. Hunter and determined that the new transfer law did not apply retroactively to cases that were pending on direct appeal, so we are no longer pursuing that issue. So I will be addressing simply whether the sentence in this case, the 65-year sentence that was imposed was constitutionally valid. The Alabama Supreme Court in People v. Reyes has confirmed that a de facto life sentence in addition to a de jure natural life sentence may offend the state's amendment. And again, in this case, the state is not disputing that this 65-year sentence that was imposed on a 15-year-old juvenile offender is a de facto life sentence. So the question we have is whether the new sentencing hearing that was conducted by Judge Corey, comported with the requirements that were set forth by the U.S. Supreme Court in Miller and Montgomery, and which People v. Holman has verified, do apply to all juvenile offenders who are being sentenced for homicide offenses. Under Miller and Montgomery, and under Holman, a natural life sentence, whether it's de jure or de facto, violates the Eighth Amendment unless the trial judge, when he imposes that sentence, considers not only the offender's age at the time of the offense, but also the attendant characteristics of the offender. So the record has to support the conclusion, the trial judge really should make a finding, but the record also has to support the conclusion that this offender who's being sentenced is among that very rare category of juvenile offenders whose crime reflects irreparable corruption, and basically a juvenile who is completely devoid of any rehabilitative potential. And those aren't the characteristics that's described in our testimony. We don't have any dispute that this was a very tragic event that led to the death of two people. It was a freakish event. I do want to remind the court that the trial judge who heard the trial and found Martez guilty of the two homicides did specifically find that Martez did not knowingly cause these murders, that this was an offense that took place because he pointed the gun, the gun hit the post, and the gun discharged because his finger was on the trigger, and as a result was one discharge of one shot, two people were killed. If you compare Martez to people who have been juveniles where their sentences have been upheld, discretionary, for example, Ricky Holman, James Walker, David Stafford, if you look at those individuals, there is a reasonable conclusion you can draw from them that they maybe are irreparable in character. They are corrupt in character. All of those defendants were 17 at the time of the offenses. Martez was 15. Each of those offenses, if you look at the underlying nature of those offenses, were vicious and exhibited depraved character, and Holman was not a depraved character. He was a victim of the crime. Mr. Holman intentionally shot and murdered a defenseless 83-year-old woman after he broke into her home. He had already committed two other murders at the age of 17. He didn't show any remorse, and he blamed other people for the offenses. Walker robbed a cab driver. He placed a slaught off shotgun against the back of the cab driver's head. The crime was racially motivated. He shot the cab driver point-and-blank, again showed no remorse. Stafford was another 17-year-old, broke into the home of a woman he actually knew to steal videotapes from her, and when she confronted him, caught him in the act, he stabbed her 45 different times, killing her, and actually said to her, as she lay dying, good-bye, bitch. And I have to point out, too, that even with those last two cases, and people v. Walker and people v. Stafford, the Illinois Supreme Court has vacated those decisions of first-degree murder. They have removed the discretionary life sentences and remanded them for consideration in light of its decision in Holman. Because in those cases, I don't think it could be said that the courts followed the dictates of Montgomery and Miller, and there needed to be a showing that the judges specifically considered the age of the individual, the attendant characteristics of youth, and that the judge determined that these individuals were complete criminals. He was completely devoid of any rehabilitative potential. I'd like to compare Martez to these other individuals, looking at the original time of the offense. He was arrested shortly after the offenses. He gave a statement to the police, admitted his involvement, and at the end of the videotaped statement, when asked if he had anything more he wanted to say, what he did was he apologized. He said, I'm sorry, I never meant for this to happen. He wrote a letter of apology to the victim's families, both at the time of the original sentencing hearing and at the time of the resentencing hearing. He's always showed remorse. He's always said, I didn't mean for this to happen, this was an accident. It was actually exhibited what Miller recognizes, that it was a stupid thing, I was 15 years old, I wasn't thinking about it, I didn't realize this would happen. With respect to his rehabilitative potential, at the time of the original sentencing hearing, he had to have a mandatory natural life sentence because of his two convictions. It was an abbreviated pre-sentence report, it was an abbreviated sentencing hearing. At that time, his age was irrelevant, his rehabilitative potential was irrelevant, even any circumstances surrounding his character, his attributes, his recklessness, his immaturity, all that was irrelevant because natural life was mandatory. But now, at the new sentencing hearing, it's been 10 years, and not only has Martez showed that he has rehabilitative potential and that this offense wasn't evidence of his depraved and corrupt character, but he's actually moved toward becoming a productive citizen. He's been in the Department of Corrections for 10 years, he has had no disciplinary infractions since he's been in the Department of Corrections. He's completed several classes, one of the classes he completed was a class on the impact of crime on victims, so for him to better understand the effect of his behavior. He completed a 12-week course called Thinking for a Change, which addresses how to recognize negative patterns of behavior and change your patterns of behavior. He's completed a number of religious courses. He was not able, while he was in the DOC, because of his security clearance or his security classification, he could not take any classes, education classes. When he got returned to the county to await resentencing, he signed up for and began taking GED classes. So, obviously, he's making efforts to improve himself, to rehabilitate himself, to understand what factors led to his behavior and to change those factors. I'd like to just close by talking about what Montgomery v. Louisiana told us about Miller. And what Montgomery says is that Miller did more than require a sentencer to consider a juvenile offender's use before imposing life without parole. It established that the penological justifications for life without parole collapse in light of the distinctive attributes of youth. And it goes on to say that even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity. So, as a matter of federal constitutional law, sentencing a child to life without parole is excessive, as Montgomery said, for all but the rare juvenile offender whose crime reflects irreparable corruption. In this case, when Judge Currie sentenced Martez Smalley, as the court actually noted in a similar case in the Seventh Circuit in McHenry v. Butler, there's no indication in this record that Judge Currie considered his age or the circumstances of his youth to have any relevance. He said nothing about the circumstances of his youth. He said nothing about whether he was impulsive or reckless. He said nothing about whether he was capable of rehabilitation or whether this defendant was irreparably corrupt and irredeemable. It's interesting, too, at the motion to reconsider sentence, when the defense attorney filed a motion to reconsider sentence, brought up the statute that had been passed effective shortly after January 1st of 2016. Martez was sentenced in August of 2015. He said, our legislature has now passed a statute requiring the sentencing judge to consider various factors when you're sentencing an individual who is under the age of 18 at the time of the offense. The defense attorney said, Judge, these factors, I know they're not binding on you, but they are persuasive. As a matter of fact, they are binding, and Holman makes that clear. A trial judge does have to consider these Miller factors when sentencing an individual under the age of 18. Again, at the time of the motion to reconsider sentence, Judge Corey made no mention at all and simply said, motion to reconsider denied. I think that's evidence of the fact that he did not take into consideration things he's constitutionally required to consider in order to appropriately reach a sentence. Because he did not follow the dictates of Miller and Montgomery, and because it simply can't be said that Martez Smalley falls within the category of offenders who are irreparably corrupt, we would ask that you vacate his 65-year sentence and remand us for a new sentencing hearing. Thank you. Thank you, Ms. Smalley. Thank you. Stephanie. Good afternoon, Your Honors. I'm just going to make a couple points. Those factors that counsel was talking about, defense counsel did a pretty good job with the sentencing hearing of presenting. The fact that there's evidence of rehabilitation since the date of this offense where he's been incarcerated. There were two PCIs, an addendum, an updated one, dealing with his mental health, his physical health, his background, his history. The same thing that any pre-sentence report would deal with. And, of course, counsel argued for the lesser sentence, the minimum sentence on each murder would have been 20 years in prison for an aggregate of 40 years because they're mandatorily consecutive. I think the elephant in the room here is the fact that this young man is not under a life sentence, neither natural or imposed, discretionary, or de facto. A 65-year aggregate term for a 15-year-old would make an 80. Is it possible he's going to get out of prison? Yes, it is. It's possible he's going to live past 80. I don't think I did that. I don't think I did that. I think I may have said, but even if you allot for that, why is the de facto sentence for a 15-year-old at 65 years, if that's what you want to say, that is no more a sure thing and it is no more egregious than a 30-year-old getting a 65-year term. Because that probably is a de facto life term. It hasn't been determined that it is. But the U.S. Supreme Court, the age, the youth, that that is the difference. That somebody that is 15, a juvenile in this case, somebody that is 15 is different. So a de facto life sentence then carries the responsibility of the trial court to make those specific findings. You know, that statute was not in effect at the time. And this judge specifically granted post-conviction relief because of Miller v. Alabama and set a sentencing hearing so that this defendant would be given something less than life. This court affirmed the natural life sentence on direct appeal in this case. And that was before Miller v. Alabama. Whether or not this judge had to grant the post-conviction relief is maybe left open for question, but nevertheless he did. And he set it for a new sentencing hearing. So this defendant is given a sentencing hearing pursuant to the statute that applies to him. Right? The sentences for murder, 20 to 60 years. And within that range, that sentence range, only an abuse of discretion is going to apply. He got an aggregate term of 65 years. 32 and a half years per individual that he shot and killed. Now, the difficulty here is that sentence is no different than what would have applied to any other juvenile based upon the murder statute and the consecutive sentence statute and the available sentence range for murder. It does not come under the purview of Miller v. Alabama. It isn't any different than any other imposed term for these offenses. So, unless you have any other questions, that's people's position on this case. Thank you very much, Ms. Duffy. And Ms. Scully and your rebuttal. Ms. Duffy did not agree in her brief that 65 years was a de facto natural life, but she never disputed it. She never argued against that. There is a case pending in the Illinois Supreme Court now, people v. Buffer, which is from the 1st District, where that court determined that a 50-year sentence imposed on a 15-year-old is not a natural life. I have to say that I'm not aware of any actuarial tables that find that 80 years is a survivable average lifespan for any individual. And now we're talking about a 15-year-old black male incarcerated in the Department of Corrections. I can't believe that anyone can find that a 65-year sentence imposed on a 15-year-old in prison is not a de facto life sentence. The state also said that Judge Curry granted the post-conviction petition, that he did not have to grant post-conviction relief. I would point out that in Montgomery v. Louisiana, that was also a post-conviction proceeding that the U.S. Supreme Court addressed. And the Supreme Court said, this is a substantive rule of law. It must be applied retroactively. And they sent that case back for a new sentencing hearing because that juvenile had gotten a natural life sentence. So I think Judge Curry did have to, as a matter of constitutional law, grant this post-conviction petition. The state also says that Marquez got a new sentencing hearing so that he would not be given a sentence of natural life. 65 years is a sentence of natural life. And there's no indication, Montgomery hadn't even been decided when the sentencing hearing went forward. So perhaps Judge Curry wasn't aware that he was mandated to consider that he had to look at not only his age, but the circumstances of his youth and how that affected his behavior. And that he also had to consider, was Marquez Smalley one of those rarest, as the U.S. Supreme Court has said, rarest of juvenile offenders who's deserving of spending the rest of his life in prison. And I don't see any possibility that that's a reasonable conclusion here. So again, we would ask for the sentence to be vacated and remanded for a new sentencing hearing. Thank you. Thank you and thanks folks for your audience today. We will take this matter under advisement and get back to you with a written disposition in a short day.